The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit are admonished to draw a nine and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Mr. Douglas, we'd be happy to hear from you. Good morning, Your Honor. If it pleases the Court, I'm Michelle Douglas, and I represent the Iraq Middle Market Development Foundation, which this Court was smart enough to dub the Foundation in its last order. I know this panel has visited this case before, so I will be brief in summarizing the facts. My client sued in 2016 in order to enforce an Iraqi judgment, and we sued under Maryland's version of the Recognition Act. The trial court dismissed at that time, without discovery, holding that mere existence of an arbitration clause was enough to allow discretionary denial of recognition. On appeal, this Court disagreed and held that the discretionary clause at Section 10704b4 simply didn't apply if there had been a waiver. But the Court stressed that the big question there was if. If there was a waiver, if Mr. Harmouth failed to attempt to protect his arbitration rights during the Iraqi litigation, then there would have been a waiver. This Court noted in that opinion that under Maryland law, the Charles J. Grant case, it has been settled that litigating a case to judgment is sufficient to establish a waiver. But, of course, the Court also gave great attention to the fact that this case is brought under the FAA and that default can't be found unless the party has been found to not only have waived the provision, but that the other side would suffer default if the party that waived were allowed to relitigate the issues and send the case back to arbitration. This Court also noted, and Counsel for Harmouth agreed, that prejudice clearly exists here if Harmouth did, in fact, fail to raise the arbitration defense. I thought that he had raised it in the Maryland state courts initially. That's true. There was a case in 2011 in which Mr. Harmouth did attempt to enforce, which is why we know that he was aware of the right and had every opportunity to raise it during the 2014 case in Iraq. The Supreme Court has told us that there's a presumption in favor of arbitration, and he did raise this in the Maryland court. And you went to Iraq and sought to get a court judgment from over there. So what he's saying is that you've done everything in your power to avoid arbitration, including forum shopping and the rest. So when he raised the right to arbitrate, which was clearly set forth in the relevant documents, why wouldn't you just go to arbitration according to the contract? Well, I should point out that there actually are two parties here that they were initially attempting to collect against. This suit is actually on a promissory note, which is in support of a loan agreement. The loan agreement was defaulted by the company, which is based in Iraq. And initially they tried to collect only on the promissory note and only in the U.S., but they weren't going to be able to do that. IMDF then started looking at what its options were in the Middle East, and in the appendix there's a declaration from Jorge Vila, who was the current head of IMDF but was not there at the time. But the decision was made that it would be impossible to enforce an arbitration clause. I'm sorry, let me restate that. There's two problems. First is there's great expense involved in ICC arbitration in Jordan, with three arbitrator tribunals under the ICC would cost tens of thousands of dollars. And I should point out that would be split between the two parties, so that even if Mr. Harmouche had tried to avoid the litigation in Maryland in order to, you know, citing the arbitration clause. You could have arbitrated in Maryland, couldn't you? No, he indicated in his papers, I believe, that he wanted to enforce the exact terms of the arbitration clause, which were to arbitrate in Jordan with the ICC. And as I said, that cost would have been split between the two parties. So what happened, I think, and the record is confusing, shall we say to the least, but he got the district court originally to dismiss the case because it should be arbitrated, right? It was dismissed. Back in the day, okay? And then he never moved to compel arbitration in Maryland. So he didn't take that step. Correct. And I believe it's unfair to say that IMDF was somehow flouting an order of the Maryland court because when the case was dismissed, they did go and try to litigate the case elsewhere. As you said, there was no order compelling arbitration. There was only a dismissal order. Why did your client go back to Iraq after losing the Maryland case? Because the options were to sue in the ICC, and I wanted to point out that besides the expense issue, there's also an issue of enforceability of an arbitration award because some of the assets of the company and presumably Mr. Harmouche were going to be located in Iraq, and Iraq was not a member of the New York or was not a signatory to the New York Convention at that time. Notably, they actually did sign on about a year ago. I think it was in early 2018. They did sign on to the New York Convention, but at the time they were not. So that arbitration could have been very expensive and for naught because we wouldn't be able to enforce it in Iraq. So the decision was made to initiate this case in Iraq. Mr. Harmouche is a citizen of Iraq? He's a dual citizen of U.S. and Iraq. I thought that on appeal in Iraq that he raised the issue of arbitration. Am I right about that? He did raise the issue, but only on appeal. After this court sent us back to the lower court, we did conduct discovery on this issue, and the two attorneys involved that were representing the parties in Iraq disagree on one fundamental fact, and that is whether or not on April 8, 2014, in a hearing before the Iraqi court, whether or not Harmouche's attorney said the sentence, we have an arbitration defense. If he didn't say that sentence, as he claims he did, then we would not be here. But the records show, first of all, our emdivs attorney in Iraq has clearly stated that it was never mentioned. I thought you just said in response to the… I'm sorry. There are multiple proceedings in Iraq, as I understand it. There are several trial court proceedings, and then I thought you said in response to my colleague, Judge Floyd, that he raised it in an appellate proceeding. Now, I thought your lawyer said he didn't, and his lawyer said he did. I'm sorry. But now you're saying he did. I'm sorry. I was unclear. Before the trial court, before judgment was issued in this case, there's a dispute of fact as to whether or not it was raised. There were five hearings held. Harmouche's attorney did not attend the first two, but he did attend the last three. And in all three of those, his substantive defenses to the case were raised. He argued jurisdiction, personal jurisdiction. He argued subject matter jurisdiction. He did not, in our opinion, ever raise arbitration until after judgment was entered. Okay. And his view is, as I understand it, that he didn't raise it at the first three or four hearings, but he did raise it at the last one. Is that right? Yes. His position is he raised it on the appellate. But that was before judgment was entered. And you say he didn't raise it any, and you have opposing deposition testimony from the two lawyers. Exactly. But all of the other evidence stacks up in favor of our side, that he did not raise it during that hearing. Most importantly are the minutes of that hearing. And both parties during discovery, both parties engaged Iraqi legal experts to testify on this, and they basically agree on all of these facts. They agree that minutes are routinely kept, they're required to be kept, that they would list all defenses that were raised. So they would both expect the arbitration defense, if it had been mentioned on April 8th, they would expect it to appear there. Did he have any choice but to litigate vigorously in the Iraqi court, just simply as a protected matter, because he couldn't afford to run the risk of just sort of laying down in the Iraqi proceedings and having the proceedings go against him. So I'm not sure that participation in the proceedings by itself would amount to a waiver, because I think he almost needed to do that as a protected measure. It would have been unfair to have simply just essentially said, well, no, we're supposed to be arbitrating and I'm not going to be a part of this. That's not a realistic option. We would agree with you, Your Honor. Well, no, he could have said, the textbook way to do it would be to say, I have to go to arbitration, right? But if we can just go to what the district court did, the district court didn't bother with any of that. What the district court said was that this is an inadequate forum, and therefore I'm not going to honor it. But that's not the way you do things. Comity says that the foreign forum does not have to be exactly like the forum in the United States, and we're dealing with that issue right now. Exactly, Your Honor. I would say that he did, by participating in the litigation, he would not have waived if he had said the sentence on April 8th, I need to arbitrate this case. If he had said it at any time before judgment. We have a case, I think it's called Forrester, that says the failure to assert arbitration in affirmative defense does not constitute default. What do you do with that case? Well, the Forrester case is pivotal here, I think, because that case does have that sentence, but that means the mere failure to raise an arbitration defense as an affirmative defense at the beginning of the case is not dispositive. But the common thread through all of the waiver and default cases is that there has to be prejudice. And the analysis of Forrester that focuses on how much litigation occurred is focusing on the question of prejudice. Was this party prejudiced by having to go through two years of litigation first? And this court held that prejudice did exist in that case because they had extensively litigated. But they actually rejected what the lower court judge had said, which is that merely not stating it in your affirmative defense is waived. So this court disagreed on that basic premise, but then went on to hold that after litigating for a couple of years and the extensive litigation that took place in that case, that was sufficient to constitute prejudice. Why were you so anxious to avoid arbitration at all costs, given the clarity of the arbitration laws in the contract, which you did sign? So you must have known that going to arbitration in this was an option, and yet you wanted to avoid arbitration at every turn. But the arbitration clause is there, and you agreed to it. And why are you so desperate to avoid arbitration that you would go to a judicial forum? Well, I don't think it's fair to say that MDF was forum shopping. This is a non-profit company. They had an agreement which was not perhaps written as clearly as it should have been. The arbitration clause is actually only contained in the loan agreement signed by the company and not contained in the promissory note. But the point is simply that because of the great expense of taking this to an ICC arbitration and the risk that after all that expense they wouldn't be able to enforce it. Would you have known of that expense when you signed the contract? Perhaps. Actually, the interesting thing is whether or not... Aren't you charged with knowledge of that expense, and yet notwithstanding that you signed the contract? Yes, I agree that that's what the contract says and that the parties are bound by the contract. I'm simply saying that it's not actually unreasonable that even Parmush might have been interested in litigating this a much cheaper way since he would have had to pay half of the filing fees and arbitrator fees in an ICC arbitration. So it wasn't unreasonable to think that that's a possibility and that he actually would be happy to waive and litigate this in nice cheap Iraq. And the parties would also have the benefit that that would actually be enforceable in Iraq. So I see that I'm almost out of time. If I could just briefly summarize. We think that the case should be overturned because the grant to summary judgment has to be overturned. The district court did not make rulings on the key finding of fact that this court remanded the case back for, which is a finding of whether or not Parmush actually took the step of stating his arbitration defense during the April 8th hearing. That's really the only issue that has to be resolved here, and the court essentially avoided that. And I see I'm out of time, so I'll save everything for a bottle. Judge Mahatsky? No, thank you. Judge Floyd? Thank you. Thank you. Ms. Patel, we'd be pleased to hear from you. Thank you, Your Honor. May it please the Court. Contrary to M.S. Skye's falling position, on the second appeal from the dismissal of its claims, district court acted properly both procedurally and substantively in granting summary judgment in favor of Mr. Parmush. The district court did exactly what M.Diff accuses it of failing to do. Namely, the district court scrupulously and unfailingly followed this court's directive to determine whether Mr. Parmush defaulted his right to arbitration by making a factual determination that Mr. Parmush had not substantially utilized the litigation machinery. But, see, my problem with that is that we have a foreign judgment here, right? Yes, Your Honor. And it's Hornbook law, Maryland law, and really generally law generally, that we honor foreign judgments. You would agree with that, right? I would agree with that. And it's Parmush's burden to demonstrate why we shouldn't enforce a foreign judgment. Right? So we start out there. Most of the circuits have gone exactly that way when they're talking about foreign judgments. That's the way it is under Maryland law. That's the way it is when we're dealing with a foreign judgment. And that's not what the district court did. What the district court did was say, I think that this procedure in Iraq is inadequate, and you couldn't get a fair shot there, and therefore I'm not going to enforce it. But that's not what we do. Foreign countries have different procedures than we do. We want them to enforce our judgments, and so we enforce theirs. Now, there may be a reason why this shouldn't be enforced, but it's not because it's an inadequate remedy in Iraq, which is what was the rationale of the district court. That can't be it because that would get rid of the whole doctrine of comedy where we'd be enforcing foreign judgments and they'd be enforcing ours. We have a foreign judgment here. Right? Your Honor, I submit— Do we have a foreign judgment? There is a foreign judgment, Your Honor. Okay. And I submit that the comedy principles are important and should be followed. But the Recognition Act itself is an acknowledgment that there are certain circumstances under which comedy is not offended by not recognizing a foreign judgment. True enough, but the district court didn't rely on those. It didn't. Your Honor, the district court relied on a string of case law that says that simply failing to assert arbitration as an affirmative defense by itself is not sufficient to constitute substantial utilization of the litigation. He said that there hadn't been substantial utilization of this, and he's not allowed—that's not what he's doing. He's got this judgment. He can't say there's not substantial utilization of the remedies in the foreign court. He's got to take that judgment for what it is. And then there may be reasons why we're not going to honor it, but it's not because there's not a judgment or because the Iraqi procedures are wrong. And I believe what the district court was getting at is when you look at the totality of the circumstances of the case, Mr. Harmouche at all times has asserted his right to arbitration. Mr. Harmouche has never waived his right to arbitration. And while the Foundation may speculate that maybe when they filed action in litigation, Mr. Harmouche, in consideration of the cost, decided to litigate the case, but that simply is not the record that's been established. Mr. Harmouche specifically testified that at all times he intended to have this dispute arbitrated. He didn't move to compel because it was not his claim, and he wasn't looking to have the claims pursued against him. But his position was if IMDb was going to pursue the claims against Mr. Harmouche, they had to do it in arbitration in Amman. The contract specifically requires that any consents to change the terms of the contract have to be made in writing. The Foundation doesn't deny that they never requested any consent from Mr. Harmouche before pursuing the action in Iraq. They never contacted him to do so. They never wrote or notified him to do so, and they never obtained written consent to do so. Under that fact pattern, which is very unique from all of the case laws dealing with default of the arbitration rights, in all of the cases from Forrester to MicroStrategy to Maxim, the party that asserts arbitration does so for the very first time months to years after litigation has been pursued. But that is not the case here. Was he obliged to make a motion to compel? I don't believe he was obliged in order to get arbitration in the United States. Sure he was. If somebody doesn't do that and the thing is dismissed, it doesn't automatically somehow out of the sky go into arbitration. I agree, Your Honor. I agree, Your Honor. But he wasn't the one pursuing these claims. His position at that time was these claims should be dismissed because they would be in arbitration. Okay, but that's a different issue. If he wanted arbitration, he had to move for arbitration. He wanted to resolve the issues without litigation or arbitration. Your answer to Judge Wilkinson originally was he didn't have to, but he did have to if he wanted arbitration, right? He moved to dismiss based on arbitration, and his position was if the foundation was going to pursue its claims, which the foundation could have decided not to pursue their claims. Indeed, but they might have lost the $2 million. They'd probably come and go all the time. They had to do so in arbitration. Now, touching on the issue of whether the arbitration right was raised in the trial court in Iraq, Judge Floyd is correct that arbitration, everyone agrees, was raised on appeal. But I submit that there is not a dispute that arbitration was raised at the trial level as well. Well, what do we do with the two warring deposition testimonies of the two lawyers? So the deposition testimony. And the minutes of this. The deposition testimony of the foundation's attorney was clear that he had no independent recollection of what happened at those hearings, other than what is contained in the summaries of what happened at the hearings. Therefore, his testimony is not a sworn statement. It is simply what is already in the summaries themselves. He has no independent recollection or knowledge that he is testifying about. The summaries themselves are just that. Even if the foundation's attorney agrees that they are not verbatim transcripts, and they do not. But what are we to do with the fact that he raised the arbitration right in Iraq at a rather belated stage, and that is at the appellate proceedings. And until that point, he was a full participant in all of the Iraqi proceedings. And normally, the way you would go about this is you would participate fully, but you would reserve your right. And you say my participation is without prejudice to my assertion of the right to arbitrate this dispute. But he went through the proceedings without ever reserving his right to arbitrate. And then he now seeks to disown a foreign judgment to which he was a full participant. Isn't that a little awkward? We submit, Your Honor, that Mr. Harmouche, like I said, his attorney testified under oath and sworn testimony that he did raise the arbitration defense before the trial court. There was a total of five hearings. The first two, Mr. Harmouche was not represented and did not appear. We submit because he wasn't aware of the action at the time. But the district court did not rely on that. They did not, Your Honor. Maybe we'd have a different case if the district court relied on that. But the district court didn't rely on that. He didn't make a determination. What the district court said was that the Iraqi procedures were not adequate, and therefore he wasn't going to honor the foreign judgment. And you can't. That's not. You've got the burden wrong. The burden is on you to destroy the foreign judgment. The burden is actually on the foundation to prove that arbitration has been waived. No, that's after we first have the foreign judgment. We honor the foreign judgment. You are disadvantaged by the foreign judgment. It's your burden to show that the foreign judgment was no good. In asserting that argument, you are saying that the arbitration was asserted. It's their burden to show when you go to that. But the initial burden of not honoring the foreign judgment is yours. And the district court didn't pay attention to that. The district court, with respect to the comedy argument, the district court I believe looked at the totality of not just that the procedures are not the same in Iraq as they are here, but also the fact that the speed with which this action was resolved from initiation. Right, but that's all part of the procedure. It was speedy. There were all of these levels. He didn't like it. It didn't look like the United States district court for the District of Maryland, which God knows is not as speedy. Even the rocket docket is not as speedy. But it's a different country. It's a different judicial system. If we had a judgment that we wanted to have, some American wanted to have or some Iraqi wanted enforced in Iraq from a United States court, would that court be able to say, well, it just really took too long and there's too much discovery and I just don't like those United States, what they do there in their courts. It's not an adequate, it's not like our procedure. No good. No, they'd have to enforce it. Unless after they've given it the benefit of enforcing a foreign judgment, there's something wrong with it. There is a string of the case law in the discussing comedy where if the procedures do not comport with the notions of justice of the American system, it doesn't. To this extent, I agree with you that the procedures in a foreign court could be corrupt or there could be bribes or there could be totalitarian interference from the executive branch of the states and things that are so alien to our system of fairness that we would not honor them. But on the other hand, we don't have that here. See, that's the problem, is that the only fault that was found, and I don't think that your client suggests otherwise, but the only fault that was found was that the proceedings were inefficient and were too truncated and were too expedited or whatever, but of course that same comment could be made about arbitration or any number of summary proceedings in the United States. I mean, we resolve things on summary judgment and we resolve things on motions to dismiss and we resolve things with relatively brief opinions, at least on appeal, and things are kicked out at trial, at the trial level at a very early stage. So in light of the comedy argument, another country could say, well, at this very early preliminary stage, American procedures are too abrupt and too dismissive. So in other words, the same argument could be made against our own procedures, and I grant you that there are countries in which the government and the state is so intertwined with the judicial system that it's impossible to get anything resembling a fair judgment, but I don't understand you to be contending that there was any kind of imbias or bribe or executive interference or whatever with respect to the Iraqi court. Mr. Harmusch did allege corruption of the Iraqi courts as part of one of the other exceptions to the Recognition Act. No, but in the opinion that we're reviewing, did he argue that before the district court here? On summary judgment, yes, we did. No, no, no. Down here he said there was corruption and that was the reason that you should not honor the foreign judgment? I'm confused, Your Honor. You're asking before the district court. We're reviewing an opinion from the district court. Yes. In that proceeding, did he say that there was corruption and that is why you shouldn't honor the Iraqi judgment? Mr. Harmusch's summary judgment motion as another basis for relief did argue the exception to the Recognition Act, the corruption exception to the Recognition Act. And what was the basis for the corruption? I believe there we submitted several reports that shows the level of corruption of the judiciary in Iraq and the level of corruption in Iraq as a whole, not just a judiciary. What about this case? In this case, there were allegations made that Mr. Harmusch was solicited to pay a bribe in order to have the Iraqi judgment be rendered in his favor, which he refused to do. That is in deposition testimony by Mr. Harmusch and by his Iraqi attorney. The district court did not rule on that basis and did not base its decision on that testimony or on those grounds. And are you pressing those grounds on appeal? I didn't see that in your brief, so maybe you could direct me to it. We have limited our appellate brief to responding to the foundation and to what the district court considered.  You wouldn't have to do that because we can affirm on any basis, right? So you could have made it a part of your answering brief, but you haven't done that, right? We did not appeal that portion of that decision. You wouldn't be appealing it. You would be offering it as an alternate grounds for us to affirm. But you haven't done that, right? Not in our brief, Your Honor. That's generally, did you write a private letter to somebody? No, Your Honor. But in responding to Judge Wilkinson, in the comedy argument, I will submit that those grounds of corruption of the Iraqi courts were raised. And I believe what the district court decided. The district court didn't talk about that at all, right? It did not. Did you have an oral argument in this case? No, we did not, Your Honor. Okay. And was it, but you say that it was in your papers somewhere. Yes, it was, Your Honor. It's not in your papers here? It is not because it was not a basis. It's not what raises the district court opinion? Yes. Okay. Well, speak to how much Mr. Hormuzh utilized the Iraqi system, the Iraqi courts. There were a total of five hearings before the trial court. The first two, Mr. Hormuzh was not present at because he didn't have notification of the action. That's what he says. That is his testimony. The third hearing, he did have an attorney appear that asked for more time to prepare a defense as he had just been retained. The fourth hearing was where they appeared, and the hearing was adjourned because the loan agreement, which the promissory note is connected to, had never been provided to the court. So the hearing was adjourned until that loan agreement could be provided, and it is the loan agreement that contains the arbitration provision. Subsequently, at the last hearing, after the loan agreement was submitted with the arbitration provision, is where Mr. Hormuzh's attorney raised the arbitration defense. He says? He says. And we believe that the summaries and the testimony of the foundation's attorney does not create a dispute of fact. It is to the contrary, but you do not think it is worth our crediting? Yes, Your Honor. You know, one possibility here is, and the second coming of the case is ordinarily should be the last, but in this instance, the absence or the disparagement of the Iraqi system does potentially do damage to the whole notion of comedy, and one option might be a remand and saying, you know, that this was an impermissible basis on which to grant summary judgment because it runs so counter to the idea of comedy, and you're going to have to do this right and look at the totality of the circumstances and pay more scrupulous attention to the mandate in the earlier case. So in that instance, we could make a statement about respecting the judgments of other nations so that ours in turn will reserve respect. I know that's not your preferred solution. I know you would want us to just toss the judgment altogether, but what would you say to identifying the impermissible basis of the decision below and returning it for a fresh look, even if for the third time? Your Honor, I believe our position would be that it wouldn't be necessary. I believe that the district court actually did consider the totality of the circumstances in terms of Mr. Varnish. But there was a heavy emphasis upon the deficiencies of the Iraqi system, right? I don't believe it was deficiencies of the Iraqi system. It was in comparison to the case law that exists in terms of participation or utilizing the litigation machinery. In the United States of America. You know, what I really have been troubling over is, can he raise the arbitration issue on appeal? Like here, he wouldn't be able to raise that issue for the first time on appeal. I mean, maybe he can in Iraq, I don't know. Or do you know? We do not know. And the Iraqi appellate court's decision is not clear as to why they rejected the arbitration. They said he hadn't raised it. They did not. They just rejected the argument. They do not specify that it is because he didn't raise it below. And you don't know anything about Iraqi law about having to raise things originally, or the first level, second level, third level, or fourth level. You don't know that. He would have had to have raised it at the trial level, is my understanding of Iraqi law. Well, that is a mispronunciation of my colleague's question. I feel like we have to word our questions very carefully to get a response here. I apologize if that's the impression, Your Honor. So I see that I'm running out of time. In closing, I do not believe the district court failed to follow this court's mandate. I believe the district court examined the case law on substantial utilization of the litigation machinery and rendered its opinion based on that case law, where simply failing to assert the arbitration defense is not sufficient to say that there's substantial utilization of litigation machinery. I also submit that it is the foundation's way to backdoor a judgment into the United States that it knew it could not get directly based on the first decision of the Maryland district court. And to permit them to have a judgment now be enforced by the same court that originally rejected that claim would offend the notions and the comedy that is deserving of these courts in the U.S. Thank you very much. Thank you, Your Honor. Ms. Douglas, you have some rebuttal time. First of all, I wanted to respond to Judge Floyd's question. Yes, this very definitely has to be raised before the trial court. That's set out in the Civil Procedure Code of Iraq at Section 253, which was discussed by both parties' experts, Iraqi law experts, and both of them agree this had to be raised before the court and wouldn't be considered on appeal. Is that in the joint appendix? It is. Do you know where? I don't know exactly where. I can tell you that Mr. Dawood is our expert, and he discusses this court at length and its procedures at a report that starts at the appendix at 646. Okay. I also wanted to point out that this whole issue of bribes is a red herring. This was raised in the first motion for summary judgment. When Harmouche did ask that the court not enforce based on these bribery allegations, first of all, they don't hold up on discovery. They kind of fall apart on discovery, and all of that is discussed in our brief on the second motion for summary judgment. But in the first motion for summary judgment, this was raised. It was rejected by the court because the case law actually requires that challenges to whether or not a court provides due process have to be looking at systemic issues and not one particular allegation of bribery. Along the lines of what Judge Wilkinson was asking. Absolutely. And so that was actually rejected in the first motion for summary judgment explicitly, and that was not cross-appealed by defendants. So as far as we're concerned, that should be completely off the table in this case under the law of the case doctrine. Even if it were, it was actually argued again in the second motion for summary judgment, and we argued race judicata and law of the case and all the factual reasons why it should fail. We also, on the issue of comedy, I just wanted to point out that this was a promissory note case. So one of the problems we have, even if the district court was permitted to go and look at the procedures in Iraq and determine whether they were sufficient, they actually weren't that different from what would have happened in a U.S. court when you're talking about a promissory note case. In a promissory note case, it's actually a Rule 11 violation to deny liability unless you have some specific defense for it. You either paid it, you didn't sign it, or you have a jurisdictional defense. And so it's not actually that different than what would have happened in a U.S. court when you would have come in at one of the first hearings or on a motion to dismiss and had to immediately provide evidence that there's a jurisdictional defense or a factual defense that makes it unenforceable. And if you can't provide those things, judgment would be issued possibly just as quickly in the U.S. had that happened here. I also want to point out that I know that Mr. Harmouche has relied heavily on the microstrategy case, and you were just discussing it very briefly. But one of the keys in that case is that it is looking, of course, at prejudice, and that's the main focus. But one of the reasons that they determined that all of that litigation was not sufficient to establish a default is because there had been no judgment issued. Here we're looking at a very different situation. I think if you look at all of the default and waiver cases, the common thread through all of them is prejudice. Prejudice, prejudice, prejudice. And that's the difference between a waiver under some state law, which would say it's waived if it's not raised at the first opportunity, and default under federal law, under the Federal Arbitration Act, that you have to have that prejudice no matter how long you've been in litigation. And here it is very difficult to establish a bright line for what is prejudice and what isn't. But as this Court noted in its first opinion of this case, prejudice is very clear where a judgment has been issued that we will now be foreclosed from enforcing if he's allowed to belatedly raise his arbitration. Can you establish prejudice simply by the fact that someone has lost arbitration rights who's provided for in the contract? Does that weigh on the prejudice side of things, or do you have to establish prejudice independent of the loss of arbitration rights? I'm not sure that he would be prejudiced because he did have the opportunity to raise it. And I also wanted to point out that there actually is some factual disparities even within Mr. Harmouche's own testimony and evidence on whether or not he had the opportunity to raise it. His attorney stated in his deposition that he only learned of the defense during the April 8th hearing, but that's simply not true, or not true according to Mr. Harmouche. Mr. Harmouche says he was aware of it from the very beginning. When he hired his attorney, he actually hired his attorney through his brother, but his marching orders from day one were enforce arbitration. Now that's a little self-serving because obviously he'd like to be able to enforce arbitration at this point, but it's certainly in conflict with his attorney that claims he didn't know about it. So looking down the road, we have two things in some tension here. Number one is the desire, which I think you are perfectly right to assert, that we respect the judgments of foreign courts. That's an important value. On the other hand, Ms. Patel raises a legitimate point, and that is we have to respect rights of arbitration that are agreed to by both parties to a contract. So, you know, you have these two values, both of which are very real in their intention, and if we rule for her, we might be doing some damage to comedy, but if we rule for you, would we be doing some damage to arbitration clauses in contracts and inviting people in foreign litigation simply to ignore arbitration clauses in contracts and head immediately to a foreign court and engage in rather blatant foreign shopping? So how do we avoid a ruling that damages arbitration rights abroad, which are very important because there are an awful lot of parties that would vastly prefer to arbitrate rather than find themselves enmeshed in foreign litigation machinery. So how do we avoid damage to arbitration rights if we were to rule in your favor in this case? I see that I just ran out of time. No, I would like an answer to that. I think that, first of all, I went looking for cases that analyze exactly that, how do you weigh comedy versus enforcement of arbitration clauses. But I don't think that recognizing the Iraqi procedure and the validity of the Iraqi judgment is in conflict with our strong public policy in favor of arbitration because that public policy is based on the right to contract. And the entire concept of waiver builds off of that concept, that people can enter into contracts for whatever they want. They can also choose not to enforce clauses in a contract if they so choose. So if you were a lawyer advising a future client in a case with an arbitration clause, let's say you were on the opposite side, what would you advise the client? Well, I would advise them that if they're- They really wanted to arbitrate. Let's suppose you were on the opposite side in a case down the road. Then you simply have to enforce your arbitration rights, as Mr. Harmusch had an opportunity to do in this case. So maybe I'm not sure I understand Iraqi law. If he had made a motion for arbitration, enforcing his right under the contract, as Judge Wilkinson said, in a timely manner, under Iraqi law, would he have been entitled to arbitration? Absolutely. There's CPC section 253 explicitly says that as long as it's raised, then the case won't be allowed to continue. But it's supposed to be raised at the first hearing. And I do want to be clear that we're not saying that because he raised it at the third hearing instead of the first hearing that that's somehow a waiver. And suppose the Iraqi court had ignored the assertion of a right to arbitrate and proceeded to judgment. Would that be prejudice? I don't think it would be. I think that if we were looking at a situation where it were clear that he had raised it on April 8th and the court had said, no, I'm not going to enforce arbitration, I'm going to just enter a judgment, that would be a completely different case. If the court had ignored the contract, wouldn't that be prejudice? If the Iraqi judge had said exactly that, I would agree with you. We wouldn't be here. I would agree with you that that can't, right, that, well, it wouldn't necessarily mean that there was no waiver. It would still mean that there was, you would have a right to question whether this was a valid. You wouldn't be. You're saying you wouldn't be trying to enforce that foreign judgment. Exactly. But even if you were trying to enforce the foreign judgment, it would be a different case in front of us. Exactly. It would be an entirely different case. I mean, if everybody knew that he had raised it and the Iraqi court said, no dice. And in that case, the judge's concern that these procedures weren't valid in some way because of the way it was handled might actually be legitimate, but that's not what happened. They follow procedures very much like ours. And there isn't really a claim about that. There isn't a claim that the Iraqi court, I don't think, from the other side, said, no, you can raise this all you want, but we're not going to enforce an arbitration clause. No, that's never been argued. And, in fact, the minutes, I would agree that the minutes are not a verbatim transcript, but they are a detailed summary. And if you look at the jurisdiction defenses that Mr. Harmouche raised at the April 8th hearing, he did in fact, the court actually goes through what both parties had to say on the topic. So it's almost unfathomable that the issue would have come up of arbitration, and the court said, no, I'm not going to enforce that, and then it wouldn't get mentioned. And, of course, the parties all signed that summary at the bottom, and both experts agree it has the force of law once it's signed by both parties. If I could have 30 seconds. We thank you so much.  You're over time now. Thank you, Your Honor. Thank you. We will come down and read counsel, and then we will proceed to our next case.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Henry F. Floyd